IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | | |
|---|---|---|
| EMERSON M.F. JOU, M.D., | ) | CIVIL NO. 09-00226 JMS-BMK |
| | ) | |
| Plaintiff, | ) | ORDER (1) DENYING PLAINTIFF'S |
| | ) | MOTION FOR AN ORDER FOR |
| vs. | ) | ARREST AND INCARCERATION |
| | ) | OF CONTEMNOR-DEFENDANT |
| GREGORY M. ADALIAN, | ) | GREGORY M. ADALIAN AND FOR |
| | ) | ATTORNEYS' FEES AND COSTS, |
| Defendant. | ) | DOC. NO. 146; AND (2) VACATING |
| | ) | ORDERS OF MAY 2, 2014, DOC. |
| | ) | NO. 141, AND JUNE 5, 2014, DOC. |
| _____ | ) | NO. 145 |

## ORDER (1) DENYING PLAINTIFF'S MOTION FOR AN ORDER FOR ARREST AND INCARCERATION OF CONTEMNOR-DEFENDANT GREGORY M. ADALIAN AND FOR ATTORNEYS' FEES AND COSTS, DOC. NO. 146; AND (2) VACATING ORDERS OF MAY 2, 2014, DOC. NO. 141, AND JUNE 5, 2014, DOC. NO. 145

## I. INTRODUCTION

Plaintiff Emerson M.F. Jou, M.D. ("Plaintiff" or "Jou") has filed a

Motion for an Order for Arrest and Incarceration of Contemnor-Defendant

Gregory M. Adalian ("Defendant" or "Adalian") ("Motion to Arrest"). Doc. No.

146. The Motion to Arrest seeks an order commanding the U.S. Marshal to arrest

Adalian and to incarcerate him until he pays both an outstanding December 23,

2010 judgment in this case consisting of $155,000 plus $6,365.36 in attorneys'

fees and costs, Doc. No. 89, as well as related fines, fees, and costs awarded in

subsequent contempt Orders. Doc. Nos. 141, 145. For the reasons set forth, the

Motion to Arrest is DENIED. Further, the court VACATES its May 2, 2014 and

June 5, 2014 contempt Orders. Doc. Nos. 141, 145.

## II. BACKGROUND

In considering Jou's Motion to Arrest, the court began by reviewing

*in toto* the procedural history of this nearly six-year-old case to understand the

precise context for the relief sought by Jou (incarceration of Adalian as a sanction

for civil contempt until Adalian pays the amounts due to Jou). In so doing, the

court gained a fresh perspective into the primary issue -- the collection of a money

judgment -- in this unusual proceeding. And, in short, the court concludes that the

matter is ultimately controlled by a larger principle that *neither* of the parties cited,

and of which this court had not previously recognized in the present context --

*contempt* proceedings are, without more, an improper means of collecting a pure

money judgment. The court sets forth the relevant details below.

### A. Proceedings Leading to a December 23, 2010 Order and Judgment

Jou filed this action on May 19, 2009, primarily seeking payment of

certain promissory notes issued to him by Adalian. Doc. No. 1. On June 28, 2010,

the parties placed a settlement on the record before Magistrate Judge Kevin S.C.

Chang. Doc. No. 63. The case, however, remained open -- a dismissal from the

parties was due on September 30, 2010. *Id.* In a July 6, 2010 written settlement agreement, Adalian agreed to pay Jou $180,000 with an initial payment of $25,000, and a second payment of $155,000 (due no later than September 30, 2010). Doc. No. 69-3 at 2. The settlement does not involve any injunctive or declaratory relief -- it concerned only payment of money. Regarding "jurisdiction and enforcement," the settlement agreement provides "[t]his Agreement shall be governed by the laws of the State of Hawaii. In the event that enforcement of any term of this Agreement is necessary, the prevailing party is entitled to recover all costs, interest, and legal fees incurred in such enforcement procedure." *Id.* at 6. That is, the agreement does not provide for retention of jurisdiction to enforce its terms.

Adalian paid the first installment of $25,000, but did not pay the remaining $155,000 by September 30, 2010 (and he has not made that payment since). Doc. No. 88, Order at 2. On October 6, 2010, Jou filed a Motion to Enforce Settlement Agreement and for Damages, Attorney's Fees, Costs and Judgment ("Motion to Enforce"). Doc. No. 69. On November 19, 2010, Magistrate Judge Chang issued a Findings and Recommendation to Grant in Part and Deny in Part the Motion to Enforce ("November 19, 2010 F&R"). Doc. No. 80. Given a binding settlement, the November 19, 2010 F&R recommended

(1) ordering Adalian to pay the $155,000 balance to Jou within one week from
when this court takes final action on the November 19, 2010 F&R; (2) entry of
final judgment of $155,000 in favor of Jou and against Adalian; (3) denial of Jou's
requests for civil contempt, damages and sanctions; and (4) an award of fees and
costs reasonably incurred in bringing the Motion to Enforce. *Id.* at 2-3.  The
November 19, 2010 F&R cautioned Adalian "that his failure to tender the balance
of the settlement amount pursuant to a court order may result in a finding of civil
contempt as well as other sanctions." *Id.* at 3.  In Supplemental Findings,
Magistrate Judge Chang recommended an additional award of $6,365.36 in fees
and costs, also to be paid within one week from this court's final action on the
November 19, 2010 F&R.  Doc. No. 81.

On December 23, 2010, this court adopted the November 19, 2010
F&R.  Doc. No. 88.  This court overruled objections from both sides, and ordered
(consistent with the November 19, 2010 F&R) as follows:

> 1. Defendant is ordered to pay $155,000 to Plaintiff
> within one week from the date of this Order -- that
> is, by December 30, 2010.  Failure to pay this
> amount within one week may result in Defendant
> being found in contempt of this Order.

> 2. The court further awards Plaintiff $5,796.00 in
> attorneys' fees, $273.11 in tax, and $296.25 in
> costs, for a total of $6,365.36.  Defendant must

4

remit this payment to Plaintiff no later than one week from the date of this Order, by December 30, 2010. Failure to pay this amount within one week may result in Defendant being found in contempt of this Order.

3.     Plaintiff's request[s] for civil contempt, damages, and sanctions are DENIED.

4.     The court directs the Clerk of Court to enter Judgment in the amount of $155,000 in favor of Plaintiff and against Defendant. The Second Amended Complaint, filed September 24, 2010, and all claims asserted therein, are dismissed with prejudice. The court retains jurisdiction to enforce the terms of the July 6, 2010 Settlement Agreement and Release between the parties.

*Id.* at 8-9. Accordingly, final Judgment was entered on December 23, 2010. The Judgment provides:

> IT IS ORDERED AND ADJUDGED that Judgment is entered in favor of the Plaintiff Emerson M. F. Jou, M.D., in the amount of $155,000.00 and against the Defendant Gregory M. Adalian and all claims asserted in the Second Amended Complaint are dismissed with prejudice, pursuant to the "Order Adopting the November 19, 2010 Findings and Recommendation to Grant in Part and Deny in Part Plaintiffs' Motion to Enforce Settlement Agreement and for Damages, and the November 23, 2010 Supplement to the Findings and Recommendation," filed on December 23, 2010. It is further ordered that Plaintiff is awarded $5,796.00 in attorneys' fees, $273.11 in tax, and $296.25 in costs for a total of $6,365.36.

5

Doc. No. 89.

**B.     2011 Post-Judgment Contempt Proceedings Attempting to Collect the December 23, 2010 Judgment**

Adalian did not pay the December 23, 2010 Judgment within seven days, and Jou then attempted to enforce the December 23, 2010 Order and to secure payment of the Judgment.  Specifically, on January 10, 2011 Jou filed a Motion for Order to Show Cause re: Contempt of Court by Defendant Gregory M. Adalian and for Attorney's Fees and Costs.  Doc. No. 90.  He also filed an Ex Parte Motion for Examination of Judgment Debtor.  Doc. No. 99.  Jou sought an order holding Adalian in civil contempt, and fining him until he paid the December 23, 2010 Judgment.  Doc. No. 90-1 at 1.  Jou also asked the court to command Adalian to produce certain tax returns and real estate records.  *Id*. at 6.  A February 14, 2011 hearing was set before Magistrate Judge Chang.  On that same date, however, Adalian filed a bankruptcy petition in the U.S. Bankruptcy Court for the Middle District of Pennsylvania ("Bankruptcy Court"), Doc. No. 103, and the case was stayed under 11 U.S.C. § 362(a).  Doc. No. 105.

On April 20, 2011, the Bankruptcy Court dismissed the February 14, 2011 bankruptcy petition, apparently for Adalian's failure to file certain documents.  Doc. No. 106-1.  After that dismissal, on May 23, 2011, Jou filed a

Second Motion for Judgment Debtor Exam. Doc. No. 108. Jou also renewed his motion seeking to hold Adalian in contempt for failure to pay the December 23, 2010 Judgment. Doc. No. 113. A hearing was scheduled before Magistrate Judge Chang for July 15, 2011. Adalian responded on July 14, 2011 by filing another bankruptcy petition in the Middle District of Pennsylvania, Doc. No. 120-2, and the hearing was continued until August 29, 2011. Doc. No. 119.

Adalian did not appear at the August 29, 2011 hearing, and on August 30, 2011 Magistrate Judge Chang issued a Findings and Recommendation to grant in part Jou's motion seeking contempt.[1] Doc. No. 122. Meanwhile, however, Adalian had filed a third bankruptcy petition in the Middle District of Pennsylvania on August 26, 2011. Doc. No. 124. After being informed of Adalian's latest bankruptcy filing, the August 30, 2011 Finding and Recommendation was vacated and the contempt motion was denied without prejudice. Doc. Nos. 126, 127.

Nevertheless (despite the bankruptcy stay), on September 23, 2011, Jou filed another motion in this court seeking to hold Adalian in contempt for failure to pay the Judgment. Doc. No. 128. Among other grounds, he argued that the bankruptcy proceedings were filed in bad faith, although he acknowledged that

---

[1] Jou argued that a stay was not in effect. Doc. No. 120 at 2.

a proceeding remained pending in the Bankruptcy Court. *See* Doc. No. 128, at 2 ("This motion is made on the further ground that while violating this Court's Order, Mr. Adalian has vexatiously and contumaciously multiplied these proceedings by maliciously filing three bankruptcy petitions. Two of the three have been dismissed. The most recent was found by the Bankruptcy Court to be in bad faith."). The September 23, 2011 contempt motion sought to imprison Adalian for failure to comply with the court's December 23, 2010 Order and corresponding Judgment. Jou also filed an Ex Parte Motion to Shorten Time to hear this September 23, 2011 contempt motion ("Ex Parte Motion"). Doc. No. 129.

On September 28, 2011, a bankruptcy judge issued a temporary restraining order, restraining Jou and/or his counsel, Stephen Shaw, from "pursuing any monetary collection actions" against Adalian, "including but not limited to" pursuing the pending Ex Parte Motion. Doc. Nos. 130-1, 130-3, 131. Accordingly, on September 29, 2011, Magistrate Judge Chang denied the Ex Parte Motion without prejudice, and set the September 23, 2011 contempt motion for a November 18, 2011 hearing. Doc. No. 131. On October 25, 2011, Jou withdrew the contempt motion without prejudice, and the hearing was vacated. Doc. Nos. 132, 133.

## C. Bankruptcy Proceedings from 2011 to 2013

While the action remained stayed in this court, extensive proceedings occurred in the Bankruptcy Court between 2011 and 2013. Some of the background is explained in three published decisions of the Bankruptcy Court -- *In re Adalian*, 474 B.R. 150 (Bankr. M.D. Pa. 2012); *In re Adalian*, 481 B.R. 290 (Bankr. M.D. Pa. 2012); and *In re Adalian*, 500 B.R. 402 (Bankr. M.D. Pa. 2013).

On November 5, 2013, the Bankruptcy Court concluded that Adalian was not entitled to discharge the debt at issue in this action. 500 B.R. at 410. That is, it entered summary judgment in favor of Jou on a complaint seeking a determination of non-dischargeability of the debt. *Id.*[2] Given that finding, it also granted Jou relief from the automatic stay to allow him to proceed in this action. *Id.* at 413.

///

///

///

---

[2] The primary basis of the denial of discharge was Adalian's failure to keep records (his admitted failure to file tax returns for ten years). 500 B.R. at 409-10. But the Bankruptcy Court also "conclude[s] that Adalian has failed to offer a satisfactory explanation for [a] loss of assets, which includes the apparent loss of cash in excess of $165,000.00, less than seven months before the bankruptcy filing." *Id.* at 413. (This refers to a February 11, 2011 balance sheet filed in the present action indicating that Adalian had $167,733 in "cash and cash equivalents" as of December 31, 2010, Doc. No. 102-2, whereas his July 14, 2011 Chapter 7 Petition listed cash on hand of $848.00. 500 B.R. at 412-13.)

**D.     Further Contempt Proceedings Attempting to Collect the December 23, 2010 Judgment**

On February 28, 2014, Jou filed a Renewed Motion for an Order that Defendant Gregory M. Adalian is in Contempt of Court, for Fines and for Other Relief Including Attorneys' Fees and Costs ("Renewed Motion").  Doc. No. 134. He again sought to find Adalian in contempt for violating the court's December 23, 2010 Order and Judgment, and sought a per diem fine as a "coercive measure." Doc. No. 134-1 at 7.  Adalian appeared without counsel by telephone at an April 9, 2014 hearing.  Doc. No. 138.  On April 9, 2014, Magistrate Judge Chang issued a Finding and Recommendation to Grant in Part and Deny in Part the February 28, 2014 Renewed Motion ("April 9, 2014 F&R").  Doc. No. 139.  The April 9, 2014 F&R:

> • Found Adalian in contempt of court, determining by clear and convincing evidence that Adalian violated the December 23, 2010 Order and had failed to demonstrate a present inability to comply with that Order.  (Adalian had failed to appear for judgment debtor examinations, and had not produced any evidence to establish that he is unable to pay amounts due.)  Doc. No. 139 at 11;
>
> • Recommended that Adalian "be ordered to pay the outstanding balance set out in [the December 23, 2010] Order within one week of the order taking action on this Findings and Recommendation."  *Id.* at 14;
>
> • Recommended a fine of $200 per calendar day as a coercive sanction until Adalian complies with the Order.

Doc. No. 139 at 13;

• Recommended an award of attorneys' fees and costs incurred in connection with the motion. *Id.* at 15; and

• Declined to recommend imprisonment. It stated, however, that "if [Adalian] continues to disobey the Order, [Jou] may renew his request for incarceration. It is well within the Court's discretion to recommend imprisonment and the Court will not hesitate to recommend such a sanction, if necessary and appropriate."

*Id*. at 13-14. Adalian did not object to the April 9, 2014 F&R, and this court adopted it as its Opinion and Order on May 2, 2014. Doc. No. 141.

On May 16, 2014, Magistrate Judge Chang issued an Order Amending a Supplemental Finding and Recommendation, recommending a further award of $33,549.36 in fees, taxes and costs against Adalian. Doc. No. 144 at 3. Without objection, this court adopted the May 16, 2014 recommendation by an Order of June 5, 2014. Doc. No. 145.

Despite the May 2, 2014 and June 5, 2014 Orders, Adalian has not paid the amounts due. Accordingly, on October 9, 2014, Jou filed the instant Motion to Arrest. Doc. No. 146. A November 18, 2014 hearing on an Order to Show Cause was set before Magistrate Judge Chang. Doc. No. 148. However, shortly after counsel entered an appearance for Adalian on November 12, 2014, Magistrate Judge Chang recused himself from the action, and the November 18,

2014 hearing was vacated.  Doc. No. 150.

Thereafter, attempts were made by Magistrate Judge Barry M. Kurren to resolve the matter, but the parties were unable to agree to a resolution.  Doc. Nos. 154, 155.  The Motion to Arrest was then set for hearing before this court. Adalian filed an Opposition on January 5, 2015, Doc. No. 157, and Jou filed a Reply on January 12, 2015.  Doc. No. 158.  A hearing was held on January 20, 2015.  At the hearing, the court raised the issue -- never having been addressed previously by either party or this court -- as to whether the court's contempt powers could properly be used in the collection of the December 23, 2010 Judgment.  The court gave Jou the opportunity to file written argument, and on February 3, 2015, Jou filed a Supplemental Brief addressing the court's contempt powers in the present context.  Doc. No. 160.

## III. <u>DISCUSSION</u>

"Sanctions for civil contempt can be imposed for one or both of two distinct purposes: (1) to compel or coerce obedience to a court order, and (2) to compensate the contemnor's adversary for injuries resulting from the contemnor's noncompliance." *Shuffler v. Heritage Bank*, 720 F.2d 1141, 1147 (9th Cir. 1983) (internal citations omitted).  Here, Jou is seeking a contempt sanction to imprison Adalian "to compel or coerce obedience" with the court's December 23, 2010

12

Order (which was reduced to the December 23, 2010 Judgment of $155,000 and $6,365.36 in fees, taxes, and costs). Doc. No. 89. He also seeks payment of the $33,549.36 in fees, taxes, and costs that was awarded on June 5, 2014 as a result of the May 2, 2014 finding of contempt. *See* Doc. No. 146-1 at 15 (requesting that "[a]n arrest warrant . . . be issued, commanding the United States Marshal to arrest Contemnor Adalian and to incarcerate him immediately upon arrest, and further that Mr. Adalian remain incarcerated until he fully complies with this Court's Orders at Docs. 88, 89, 122, 139, 141, 142, 144 and 145").

Viewed in this context, and in reviewing the history of this action, it is now clear that these contempt proceedings are (and always have been) an attempt by Jou to collect the December 23, 2010 Judgment. The July 6, 2010 Settlement Agreement contained no injunctive or declaratory relief against Adalian -- only payment of money is (and always has been) at issue. Although the December 23, 2010 Order required payment within seven days, that command was simply to pay the Judgment, not separate injunctive relief. *See Saber v. FinanceAmerica Credit Corp.*, 843 F.2d 697, 702-03 (3rd Cir. 1988) ("A settlement agreement is a contract, and an order enforcing a contract is ordinarily described as an order for specific performance. . . . The fact that a specific date for compliance is attached to an order for specific performance of the settlement

agreement does not by itself transform the enforcement order into a mandatory injunction. Nor is the specific performance order made an injunction merely by inclusion of an order to pay money. . . . An award of monetary compensation is a legal remedy and is not transformed into an injunctive remedy merely by a district court's imposition of a time limit on the defendants' obligation to pay.") (citation omitted).[3] Jou has filed several contempt motions seeking to coerce Adalian into paying his debt. But given this procedural posture -- where Jou is only attempting to collect payment on a final money judgment -- it has become apparent that civil contempt proceedings are (and were) improper and must now be terminated.

"The proper means . . . to secure compliance with a money judgment is to seek a writ of execution, not to obtain a fine of contempt for the period of non-payment." *Shuffler*, 720 F.2d at 1147. *See also, e.g.*, *Hilao v. Estate of Marcos*, 95 F.3d 848, 854 (9th Cir. 1996) (applying *Shuffler*); *In re Wallace*, 490 B.R. 898, 906-07 (B.A.P. 9th Cir. 2013) (reiterating that the proper means of

---

[3] *Saber's* reasoning is directly on point, and thus the court rejects Jou's attempt in his supplemental briefing to recast the December 23, 2010 Judgment as involving injunctive relief to which contempt powers might apply. *See* Doc. No. 160, Suppl. Mem. at 3. That is, the court disagrees with Jou's argument that this is not solely an attempt to collect a money judgment because enforcing a settlement agreement is characterized as "specific performance" of a contractual obligation. *See, e.g.*, *Garcia v. Rambo Sec. Patrol, Inc.*, 2010 WL 750296, at *3 n.3 (S.D. Fla. Mar. 3, 2010) (noting that the court's power to enforce a settlement agreement does not include the power of contempt, reasoning in part that a specific performance order is not "made an injunction merely by inclusion of an order to pay money") (quoting *Saber*, 843 F.2d at 702).

securing compliance with a money judgment is a writ of execution, not contempt);

*In re Valentine*, 2014 WL 1347229, at *5 (Bankr. D. Idaho Apr. 3, 2014) ("At

bottom, the Court views the Motion as . . . an attempt to use contempt as an

improper means to collect a previously ordered money judgment. The proper

remedy is to execute on the Judgment."); *Combs v. Ryan's Coal Co.*, 785 F.2d

970, 980 (11th Cir. 1986) (same); *Aetna Cas. & Sur. Co. v. Markarian*, 114 F.3d

346, 349 (1st Cir. 1997) (same).

This principle is derived from Federal Rule of Civil Procedure 69,

which provides in pertinent part:

> (a) In General.
>
> (1) Money Judgment; Applicable Procedure. *A money judgment is enforced by a writ of execution, unless the court directs otherwise.* The procedure on execution -- and in proceedings supplementary to and in aid of judgment or execution -- must accord with the procedure of the state where the court is located, but a federal statute governs to the extent it applies. (Emphasis added).
>
> (2) Obtaining Discovery. In aid of the judgment or execution, the judgment creditor or a successor in interest whose interest appears of record may obtain discovery from any person -- including the judgment debtor -- as provided in these rules or by the procedure of the state where the court is located.

And although Rule 69 states that collection is by writ of execution "unless the

court directs otherwise," this clause does not "permit a federal court to 'enforce a money judgment by contempt or methods other than a writ of execution, except in cases where established principles so warrant.'" *Shuffler*, 720 F.2d at 1148 (quoting 7 J. Moore & J. Lucas, *Moore's Federal Practice* ¶ 69.03[2] (2d ed. 1982)) (other citations omitted).[4] *See also Gabovitch v. Lundy*, 584 F.2d 559, 560-61 (1st Cir. 1978) ("[T]he legislative history and judicial application of Rule 69(a) make clear that the first sentence of the Rule expresses a limitation on the means of enforcement of money judgments and does not create a general power to issue writs of execution in disregard of the state law incorporated by the rest of the Rule. . . . [T]he purpose of the first sentence of Rule 69(a) is to restrict remedies on money judgments to legal process and to avoid broad invocation of in personam relief, except where established principles warrant equitable relief."); *Hilao*, 95 F.3d at 854 (reiterating that the "otherwise" clause in Rule 69(a) does

_____

[4] A more recent version of *Moore's Federal Practice* is consistent:

> Rule 69(a)(1) provides that a "money judgment is enforced by writ of execution, unless the court otherwise directs." This language appears to contemplate a means to enforce money judgments other than by writ of execution. However, such other means are confined to cases in which established principles warrant equitable relief, such as when execution would be an inadequate remedy. For example, enforcement through the imposition of a contempt sanction would not be authorized absent exceptional circumstances.

13 James W. Moore, et al., *Moore's Federal Practice* § 60.03[1] (3d ed. 2013).

not "permit a federal court to 'enforce a money judgment by contempt or methods other than a writ of execution, except in cases where established principles so warrant'") (quoting *Shuffler*, 720 F.2d at 1148); *Combs*, 785 F.2d at 980 ("The 'otherwise' clause is read narrowly.") (citations omitted).

*Hilao* noted that "at least two cases have upheld the use of contempt in the enforcement of money judgments, but they have done so where state law allowed that procedure." 95 F.3d at 855 n.11 (citations omitted). But Hawaii law *also* specifically disallows the use of contempt as a means of enforcing a money judgment. *See In re Adam*, 105 Haw. 507, 518, 100 P.3d 77, 88 (Haw. App. 2004) ("Generally, money judgments are enforced by execution. Various other collateral or auxiliary remedies are available for the enforcement of money judgments, but contempt of court is not one of those remedies.") (quoting *Bahre v. Bahre*, 230 N.E.2d 411, 415 (Ind. 1967)).[5]

_____

[5] Although the Hawaii Supreme Court has not specifically addressed the issue, this court is persuaded by and follows the clear holding in *In re Adam* -- a decision of the Hawaii Intermediate Court of Appeals. *See, e.g.*, *Ariz. Elec. Power Co-op., Inc. v. Berkeley*, 59 F.3d 988, 991 (9th Cir. 1995) ("In the absence of [a decision of the state's highest court], a federal court must predict how the highest state court would decide the issue using intermediate appellate court decisions, decisions from other jurisdictions, statutes, treatises, and restatements as guidance.") (quoting *In re Kirkland*, 915 F.2d 1236, 1239 (9th Cir. 1990)).

In this regard, Jou contends -- incorrectly -- that *In re Adam* indicates that a money judgment is enforced by civil contempt under Hawaii law if "there is . . . evidence on the record supporting [a] decision to bypass the standard execution process for a money judgment[.]" Doc. No. 160, Suppl. Mem. at 6-7 (quoting *In re Adam*, 105 Haw. at 519, 100 P.3d at 89). But Jou cites dicta from *In re Adam* distinguishing a procedure (followed in some other states) that

(continued...)

Given this line of binding precedent, the court has no power in the current posture to impose contempt citations, including imprisonment, against Adalian.[6] Thus, the court DENIES the Motion to Arrest. Moreover, the court must VACATE the court's May 2, 2014 and June 5, 2014 Orders, Doc. Nos. 141 & 145, that adopted the Findings and Recommendations regarding contempt. *See Shuffler*, 720 F.2d at 1148 ("Consequently, to the extent the order of contempt was intended to enforce payment, it cannot be sustained.").

Jou argues in supplemental briefing that the court's prior contempt

---

[5](...continued)
Hawaii does *not* follow. *See id*. at 518, 100 P.3d at 89 ("As the following quote indicates, *even in a state [unlike Hawaii] that appears to permit a court to use its civil contempt power to hold a judgment debtor in civil contempt for failure to pay a monetary judgment*, that power is severely limited in that situation.") (emphasis added). Rather, Hawaii law is the *same* as federal law in the process to enforce a money judgment. *See id.* ("In determining a party's civil remedy for enforcing a monetary judgment, we turn to [Hawaii Rule of Civil Procedure 69] . . . . [which] states: 'Process to enforce a judgment for the payment of money shall be a writ of execution, unless the court directs otherwise.'").

[6] Jou chose to pursue only contempt sanctions as a means of enforcing the December 23, 2010 Judgment in 2011 and 2014. The court recognizes that Jou might have been prompted by the court's December 23, 2010 Order, which stated that "[f]ailure to pay [the amount of judgment] within one week may result in Defendant being found in contempt of this Order." Doc. No. 88. But such statements are of no effect given Rule 69(a) and binding Ninth Circuit precedent.

Similarly, although the December 23, 2010 Order stated that "[t]he court retains jurisdiction to enforce the terms of the July 6, 2010 Settlement Agreement and Release between the parties," Doc. No. 88 at 8-9, this retention of jurisdiction for enforcement -- which was not provided for in the July 6, 2010 Settlement Agreement itself -- does not mean the court can elect "a process of enforcement other than execution according to state law." *Andrews v. Roadway Express, Inc*., 473 F.3d 565, 568 (5th Cir. 2006). That is, "mere retention of continuing limited jurisdiction to enforce a final judgment does not trigger the "otherwise" clause of Rule 69(a)." *Id.* at 569.

Orders should stand under the law of the case doctrine.  Doc. No. 160, Suppl.

Mem. at 1.  The court disagrees.  "Under the law of the case doctrine, a court is

'generally precluded from reconsidering an issue previously decided by the same

court' if 'the issue in question [was] decided explicitly or by necessary implication

in [the] previous disposition.'"  *U.S. E.E.O.C. v. Global Horizons, Inc*., 904 F.

Supp. 2d 1074, 1091 (D. Haw.  2012) (quoting *United States v. Lummi Indian*

*Tribe*, 235 F.3d 443, 452 (9th Cir. 2000)) (internal quotation marks omitted).

"The doctrine is not, however, 'an inexorable command, . . . nor is it a limit to a

court's power."  *Id.* (quoting *United States v. Smith*, 389 F.3d 944, 949 (9th Cir.

2004) (square backets omitted)).  "Rather, its application is discretionary . . . and a

trial judge in particular has broad discretion to reconsider rulings made pre-trial."

*Id*. (citation omitted).  "A district court abuses its discretion in applying the law of

the case doctrine only if (1) the first decision was clearly erroneous; (2) an

intervening change in the law occurred; (3) the evidence on remand was

substantially different; (4) other changed circumstances exist; or (5) a manifest

injustice would otherwise result."  *Id.* at 1092 (citation omitted).

As explained above, the court's earlier contempt Orders were issued

in contravention of established Ninth Circuit precedent.  Precedent requires those

Orders to be vacated.  *See, e.g.*, *United States v. 5.935 Acres of Land*, 752 F. Supp.

359, 361 (D. Haw. 1990) ("It is an elementary principle of federal jurisprudence that federal district courts must follow the rules of law announced by the appellate court in their circuit.").  And given that all the prior contempt Orders are no longer in effect, the only amounts presently due are set forth in the original December 23, 2010 Judgment ($155,000 plus $6,365.36 in attorneys' fees and costs), plus additional post-judgment interest.[7]

To be clear, the court is not questioning the undisputed power of a trial court to determine the validity of settlement agreements, and to enforce such agreements by specific performance.  *See, e.g.*, *Adams v. Johns-Manville Corp.*, 876 F.2d 702, 709 (9th Cir. 1989) ("The motion to enforce the settlement agreement essentially is an action to specifically enforce a contract."); *Callie v. Near*, 829 F.2d 888, 890 (9th Cir. 1987) ("[A] district court has the equitable

---

[7]  The parties have discussed post-judgment interest under state law.  *See, e.g.*, Doc. No. 157, Def.'s Opp'n at 9.  The general rule is that "[i]n diversity actions, state law determines the rate of prejudgment interest, and postjudgment interest is governed by federal law."  *Am. Tel. & Tel. Co. v. United Computer Sys., Inc.*, 98 F.3d 1206, 1209 (9th Cir. 1996) (citation omitted).  Regarding postjudgment interest, 28 U.S.C. § 1961 provides that "[i]nterest shall be allowed on any money judgment in a civil case recovered in a district court," and "interest shall be calculated from the date of the entry of the judgment" at the rate of the "weekly average 1-year constant maturity Treasury yield, as published by the Board of Governors of the Federal Reserve System."  Under current economic conditions, the federal rate is very much lower than the rate under Hawaii law.  *See, e.g.*, *In re Metro. Mortg. & Sec., Co.*, 448 B.R. 527, 538 (D. Haw.  2011), *aff'd sub nom.*, *GGBY Ewa Ltd. P'ship v. Fin. Factors, Ltd.*, 584 F. App'x 366 (9th Cir. 2014) (analyzing state and federal postjudgment interest rates)); http://www.federalreserve.gov/ releases/h15/current (last visited February 2, 2015) (indicating that as of January 30, 2015, the rate is 0.17 percent).

power to enforce summarily an agreement to settle a case pending before it."); *Edwards v. Trade Pub. Ltd.*, 2013 WL 1296277, at *3 (D. Haw. Mar. 27, 2013) ("Under Hawaii law, '[w]here the evidence in the record shows that all the essential elements of a contract are present, a compromise agreement among the parties in litigation may be approved by the court and cannot be set aside except on grounds that would justify rescission.'") (quoting *Miller v. Manuel*, 9 Haw. App. 56, 63, 828 P.2d 286, 291 (1991)). And -- contrary to Jou's argument made in supplemental briefing, Doc. No. 160, Suppl. Mem. at 3-4 -- merely because enforcement of a settlement agreement is "equitable" does not mean a subsequent pure money judgment is enforceable by contempt. Rather, it means that generally there is no right to have a jury determine whether an agreement is enforceable. *See Adams*, 876 F.2d at 709-10 (determining that a "motion to enforce the settlement agreement essentially is an action to specifically enforce a contract," which is "an equitable proceeding not giving rise to a right to a jury trial").

Likewise, the court is not questioning its contempt powers for violations of specific court orders, including sanctions for misconduct. *See, e.g.*, *Shuffler*, 720 F.2d at 1146 ("A court has power to adjudge in civil contempt any person who willfully disobeys a specific and definite order requiring him to do or to refrain from doing an act."); *Cleveland Hair Clinic, Inc. v. Puig*, 106 F.3d 165,

166 (7th Cir. 1997) ("Use of the contempt power is an appropriate way to enforce a sanction for misconduct, which is not an ordinary money judgment."). And contempt powers may be used to enforce orders in aid of a writ of execution. *See, e.g.*, *In re Ali*, 2011 WL 1655578, at *1 n.1 (Bankr. D.D.C. Apr. 29, 2011) ("This does not mean, however, that the court cannot utilize civil contempt as a mechanism to enforce orders: . . . supplementary to the judgment or execution . . . invoked under Fed. R. Civ. P. 69(a)(1); or [] issued incident to discovery proceedings under Fed. R. Civ. P. 69(a)(2)."). But "difficulties in enforcing the judgment due to the location of the assets and the uncooperativeness of the judgment debtor are not the types of extraordinary circumstances which warrant departure from the general rule that money judgments are enforced by means of writs of execution rather than by resort to the contempt power of the courts." *Markarian*, 114 F.3d at 349 n.4 (citing *Hilao*, 95 F.3d at 855). Here, however, in the present context involving collection of a money judgment only, the court lacks contempt powers.

## IV.  CONCLUSION

The court does not take this action lightly. It understands the inefficiency that this Order creates in Jou's attempts to obtain payment of the outstanding Judgment. Nevertheless, the court must apply established law.

Because contempt powers cannot apply in the present context, the court

DENIES Jou's Motion for an Order for Arrest and Incarceration of Contemnor-

Defendant Gregory M. Adalian. Doc. No. 146. The court's Orders of May 2,

2014, Doc. No. 141, and June 5, 2014, Doc. No. 145 are VACATED. To be clear,

the amounts presently due are set forth in the original December 23, 2010

Judgment ($155,000 plus $6,365.36 in attorneys' fees and costs), plus additional

post-judgment interest.

      IT IS SO ORDERED.

      DATED: Honolulu, Hawaii, February 5, 2015.



       /s/ J. Michael Seabright
      J. Michael Seabright
      United States District Judge

*Jou v. Adalian*, Civ. No. 09-00226 JMS-BMK, Order (1) Denying Plaintiff's Motion for an Order for Arrest and Incarceration of Contemnor-Defendant Gregory M. Adalian and for Attorneys' Fees and Costs, Doc. No. 146; and (2) Vacating Orders of May 2, 2014, Doc. No. 141, and June 5, 2014, Doc. No. 145

23